**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MANUEL DE JESUS VASQUEZ CRUZ**,<br>*Petitioner*,<br>v.<br>**J.L. JAMISON,** *et al.*,<br>*Respondents.* | **Case No. 26-cv-07784-JDW** |

**MEMORANDUM**

Justice Holmes once wrote that "[m]en must turn square corners when they deal with the Government." *Rock Island A. & L.R. Co. v. United States*, 254 U.S. 141, 143 (1920). A century later, Chief Justice Roberts recognized that "it is also true, particularly when so much is at stake, that the Government should turn square corners in dealing with people." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 24 (2020) (citation modified). It's difficult to imagine higher stakes than the right to be free from unlawful restraint, especially when a detainee challenges the validity of his arrest warrant. Manuel de Jesus Vasquez Cruz seeks a writ of habeas corpus based on such a challenge. Because the Government cut corners in his case, I grant the Petition.

## I. BACKGROUND

### A. Relevant Legal Framework

When DHS suspects that a noncitizen is removable, a federal official issues an administrative document called a Notice To Appear ("NTA"), beginning removal

proceedings against the noncitizen. *See* 8 U.S.C. § 1229(a)(1); *Arizona v. United States*, 567 U.S. 387, 407 (2012). The NTA functions as the "charging document" in removal proceedings. *Vazquez Perez v. Decker*, No. 18-CV-10683 (AJN), 2019 WL 4784950, at *1 (S.D.N.Y. Sept. 30, 2019). It is thus a "case-initiating" document that "serves as the basis for commencing a grave legal proceeding," like "an indictment in a criminal case or a complaint in a civil case." *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (citation modified).

8 U.S.C. § 1226(a) provides that "[o]n a warrant issued by the Attorney General," a noncitizen "may be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). A Form I-200, Warrant of Arrest, is the administrative warrant that ICE and DHS use when arresting noncitizens under Section 1226(a). *See* 8 C.F.R. 236.1(b)(1). Immigration officers may arrest a noncitizen and take him into custody "under the authority" of a Form I-200 warrant "[a]t the time of issuance of the notice to appear, or any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b)(1).

The INA also provides immigration officers with limited authority to make warrantless arrests pursuant to 8 U.S.C. § 1357. *See* 8 U.S.C. § 1357(a)(2); *Arizona*, 567 U.S. at 408. An officer may arrest a noncitizen without a warrant if he has "reason to believe" that the noncitizen is violating certain immigration laws or regulations and is "likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2). Immigration officers are

limited by the Fourth Amendment in exercising this authority, leading courts to interpret "reason to believe" as equivalent to "probable cause." *Lee v. Immigr. & Naturalization Serv.*, 590 F. 2d 497, 500 (3d Cir. 1979); *see also Oliva-Ramos v. Att'y Gen. of U.S.*, 694 F.3d 259, 285 (3d Cir. 2012).

**B. Mr. Vasquez Cruz's Detention**

On the morning of October 8, 2026, ICE officers began surveilling what they believed to be Mr. Vasquez Cruz's residence in Upper Darby, Pennsylvania. Mr. Vasquez Cruz came across ICE's radar after the agency discovered that the Upper Darby Police Department arrested him in July 2026. At the time of his arrest, Mr. Vasquez Cruz informed Upper Darby Police of his Guatemalan citizenship, but the Delaware County Prison released him before ICE's Enforcement and Removal Operations ("ERO") Criminal Alien Program could interview him. ICE assigned him an event number, making him an ICE target as a suspected noncitizen in the United States without proper permission or parole. ICE did not yet issue a warrant for Mr. Vasquez Cruz's arrest because it sought to collect more evidence regarding his nationality, which led to the surveillance conducted on October 8.

After observing Mr. Vasquez Cruz exit the residence and enter a vehicle, officers followed for a short time before stopping the car after it paused to pick up a third individual. An ICE ERO officer handcuffed and questioned Mr. Vasquez Cruz, who confirmed that he was a citizen of Guatemala present in the U.S. without lawful status,

and ran his biometrics, which came back negative or any immigration hits. The officer determined that probable cause existed that Mr. Vasquez Cruz resided in the country without authorization and decided to detain him. The officer handwrote a Form I-200 warrant and gave it to another officer to execute and serve on Mr. Vasquez Cruz. Later that same day, ICE served Mr. Vasquez Cruz with a Notice to Appear (beginning removal proceedings against him), an I-286 Notice of Custody Determination designating his detention under Section 1226(a), and a computer-generated version of the Form I-200 warrant.

### C. Procedural History

On October 9, 2026, Mr. Vasquez Cruz filed a Petition for writ of habeas corpus in this Court while detained at the Federal Detention Center in Philadelphia (ECF No. 1). He argues that his arrest violated Section 1226(a), its implementing regulations, and his due process rights. He also contends that ICE further violated his due process rights by failing to conduct an individualized custody determination before detaining him. The Government maintains that ICE detained Mr. Vasquez Cruz pursuant to a valid warrant, and even if it did not, it conducted a valid warrantless arrest under 8 U.S.C. § 1357(a)(2). It also argues that Mr. Vasquez Cruz needs to exhaust his administrative remedies before filing a habeas petition in federal court.

## II. LEGAL STANDARD

28 U.S.C. § 2241 grants federal district courts the authority to review the legality of immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The district court may grant a writ of habeas corpus when the petitioner is "in custody under or by color of the authority of the United States … in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. §§ 2241(c)(1), (c)(3). It is the petitioner's burden to show that his detainment violates the Constitution or federal law. *See id.* § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941). In that same vein, courts recognize that it is the petitioner's burden to prove facts entitling him to release from custody. *Goins v. Brierley*, 464 F.2d 947, 949, 949 n.4 (3d Cir. 1972) (listing cases).

## III. ANALYSIS

Mr. Vasquez Cruz brings claims challenging both his arrest and detention by ICE. Because I can resolve his Petition on the claim regarding his arrest, I focus on those arguments and do not address his detention claims.

### A. Exhaustion

Habeas petitioners ordinarily must exhaust their administrative remedies under Section 2241. *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). However, the statute itself does not contain an explicit exhaustion requirement, making exhaustion under Section 2241 prudential rather than mandatory. *Id.*; *see also McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Courts will excuse exhaustion where: (1) the administrative remedies

would be futile; (2) the agency's actions "clearly and unambiguously violate statutory or constitutional rights;" or (3) the administrative procedure at issue "is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). Courts may also waive exhaustion where the issue presented is one of statutory construction. *See Delgadillo v. Blanche, et al.*, No. CV 26-6195, 2026 WL 2569475, at *2 (E.D. Pa. Aug. 31, 2026) (citing *Vasquez v. Strada*, 684 F.3d 431, 433–34 (3d Cir. 2012)).

Mr. Vasquez Cruz argues that ICE submitted him to a warrantless arrest in violation of the INA and its implementing regulations. His claim is one of statutory construction, allowing me to waive exhaustion in this case. *See Delgadillo*, 2026 WL 2569475, at *2; *Vasquez*, 684 F.3d at 433–34. It is also not a claim that he can make to an Immigration Judge because it is not a claim about whether he merits release from custody during removal proceedings. While he could ask the IJ to suppress statements he made after an improper arrest, there does not appear to be a way for him to challenge the arrest itself. Requiring Mr. Vasquez Cruz to exhaust his claim would also be futile, as several courts in this District have recognized that a later bond hearing, which is the administrative remedy available in this case, "does not necessarily cure the alleged constitutional violation that preceded it." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (collecting cases). If ICE detained Mr. Vasquez Cruz without a proper warrant, then his detention under Section 1226(a) is unlawful. *See Melendez-Guzman v. Jamison*, No. 26-cv-7556, 2026 WL 2983704, at *3 (E.D. Pa. Oct. 5, 2026). A later bond hearing held

in front of an immigration judge would not reverse the unconstitutional damage done at his arrest. I excuse exhaustion in this context.

Finally, while I don't premise my exhaustion finding on grounds related to due process, I take a moment to note something from the Government's briefing. The Government attempts to convince me that my logic behind excusing exhaustion for due process claims, as I articulated recently in *Basboga, v. Jamison*, No. 2:26-CV-06694-JDW, 2026 WL 3033623 (E.D. Pa. Oct. 9, 2026), should not apply in this case. Its argument is unpersuasive for two reasons. First, the Government presents its argument in a footnote. My Policies and Procedures state that I don't consider substantive arguments presented in footnotes. Second, I acknowledged in *Basboga* that while the Government's concession at oral argument that Mr. Basboga could not exhaust his due process arguments before an immigration judge might have been enough alone for me to excuse exhaustion, I didn't need to rely on the concession. *Id.* at *3. I separately recognized that requiring Mr. Basboga to exhaust his administrative remedies would be futile. *Id.* The logic from *Basboga* extends to similar cases, like this one, where Petitioners seek to challenge conduct other than the detention decision itself.

**B. Violation Of The INA And Implementing Regulations**

**1. Arrest under Section 1226(a)**

Under Section 1226(a), ICE may arrest and detain a noncitizen "*[o]n a warrant* issued by the Attorney General" pending the outcome of his removal proceedings. 8 U.S.C.

§ 1226(a) (emphasis added). The plain language of the statute requires a warrant for arrest and detention. *Juarez v. Mullin*, No. 26-cv-7008, 2026 WL 2981947, at *2 (E.D. Pa. Oct. 5, 2026); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). The regulations confirm that immigration officials may arrest and detain a noncitizen "under the authority" of a Form I-200 warrant "*[a]t the time of issuance* of the notice to appear, or any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b)(1) (emphasis added).

Read together, the language of Section 1226(a) and its implementing regulations provide that "DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues *at the same time or after* DHS issues an NTA." *Lopez-Lopez v. Jamison, et al.*, No. 26-CV-7618, 2026 WL 3094744, at *3 (E.D. Pa. Oct. 16, 2026) (quoting *Vladimir G. v. Easterwood*, No. 26-cv-2971, 2026 WL 1786418, at *2 (D. Minn. June 22, 2026)) (emphasis added). This interpretation also honors the purpose of the relevant law and documents. Section 1226(a) authorizes the detention of noncitizens pending the outcome of their removal proceedings. An NTA initiates those removal proceedings. It therefore follows that without an NTA, removal proceedings are not pending, and there is no basis to issue a warrant to detain a noncitizen pursuant to Section 1226(a). *See Loaeza v. Bausch*, No. 26-CV-00945-MAV, 2026 WL 2150155, at *1 (W.D.N.Y. July 27, 2026). District courts across the country have reached this same conclusion, and I find their reasoning persuasive. *See, e.g.*, *Lopez Romero v. Genalo*, No. 26 CIV. 6184 (AT), 2026 WL 2240720, at *2 (S.D.N.Y.

Aug. 3, 2026); *Pedro D.C. v. Blanche*, No. 26-CV-2450 (KMM/DLM), 2026 WL 1759444, at *1 (D. Minn. June 18, 2026); *Castanon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 848–50 (N.D. Ill. 2025).

ICE failed to follow this proper sequence of events in arresting Mr. Vasquez Cruz. Based on the record before me, officers executed and served a handwritten Form I-200 warrant after interrogating Mr. Vasquez Cruz at the scene of his arrest. At that time, Mr. Vasquez Cruz did not have an existing NTA, and officers did not provide him with one contemporaneously with his arrest. The Government confirms that DHS did not issue an NTA until "[l]ater that day," after Mr. Vasquez Cruz had already been detained at the Federal Detention Center in Philadelphia. (ECF No. 6 at 8.) It is undisputed then that ICE arrested and detained Mr. Vasquez Cruz on a Form I-200 warrant before DHS issued an NTA. Indeed, the Government does not address this issue in its Opposition, despite Mr. Vasquez Cruz having made the argument in his Petition. (*See* ECF No. 1 at ¶¶ 36-37.) ICE therefore subjected Mr. Vasquez Cruz to an unlawful arrest based on an invalid warrant. *See* 8 U.S.C. § 1226(a); *Aguilar Torres v. Hardin*, No. 26-cv-1480, 2026 WL 1353242, at *1 (M.D. Fla. May 15, 2026).

Although I find that the Government detained Mr. Vasquez Perez without a proper warrant because of its failure to follow the proper procedure leading up to his arrest, I reject his argument that he suffered a warrantless detention because of the actions that ICE officers took *during* his arrest. His argument boils down to an assertion that ICE

arrested him when officers pulled him out of his coworker's vehicle and handcuffed him, which occurred before the ICE ERO officer issued the handwritten Form I-200 warrant, therefore subjecting him to a warrantless arrest. This argument is unavailing.

ICE officers may interrogate a person who they believe to be a noncitizen, even without a warrant. *See* 8 U.S.C. § 1357(a)(1); *Lawal v. McDonald*, 546 F. App'x 107, 111 (3d Cir. 2014). Mr. Vasquez Cruz concedes that ICE officers spent several minutes questioning him after placing him in handcuffs. It is not until an immigration official signs a warrant for arrest that a petitioner's detention is pursuant to the warrant, and he is detained in custody under Section 1226(a). *See Moraloes Bonilla v. Soto, et al.*, No. CV 26-12814 (JXN), 2026 WL 3093798, at *2 (D.N.J. Oct. 16, 2026). ICE officers executed and served Mr. Vasquez Cruz with a handwritten Form I-200 warrant, as Petitioner acknowledges, about eight minutes after ICE officers placed him in handcuffs. ICE placed Mr. Vasquez Cruz under arrest at that time, not before. *See id.* at *2.

**2. Arrest under Section 1357(a)(2)**

Because ICE arrested Mr. Vasquez Cruz under Section 1226(a) on an invalid warrant, I must examine whether it can fall back on its authority to conduct warrantless arrests of noncitizens under 8 U.S.C. § 1357(a)(2). To satisfy Section 1357(a)(2), ICE officers must base a warrantless arrest on probable cause that the noncitizen is violating certain immigration laws or regulations **and** is "likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2). The law thus requires that immigration officers make two separate, distinct

determinations to make a warrantless arrest under Section 1357(a)(2). *See id.*; 8 C.F.R. § 287.8(c)(2)(ii). They may not base a warrantless arrest on removability alone. *See Par v. Jamison*, No. CV 26-3504, 2026 WL 1603299, at *3 (E.D. Pa. June 4, 2026). This analysis turns on what the arresting officer knew at the time he took the noncitizen into custody. *Tabora-Brizuela v. Mullin*, No. CV 26-7010, 2026 WL 2908095, at *2 (E.D. Pa. Sept. 28, 2026).

Courts interpret "likely to escape" as "likely to evade detention by immigration officers." *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026) (collecting cases).[1] In making this determination, ICE ERO officers are trained to consider the totality of circumstances. *See id.* at 980; *see also M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147, 1158 (D. Or. 2026). There is no exhaustive list of factors for officers to consider, and neither the Supreme Court nor the Third Circuit provides a clear analysis on this point. In the well-reasoned *Castanon Nava* opinion, the Seventh Circuit presented several factors to consider that I view as a sufficient summary of the factors that federal courts across the country have surveyed. *See* 806 F. Supp. 3d at 854. These factors include whether the noncitizen: "(1) was arrested near his home; (2) lacked a known criminal history at the time of his arrest; (3) answered questions posed to him by ICE without incident or evasion; (4) was working in the area; (5) had a stable residence with a spouse, fiancé, and children; (6)

[1] I focus on the "likely to escape" prong of the Section 1357(a)(2) analysis because Mr. Vasquez Perez admitted to ICE officers that he did not have lawful status in the United States and ICE records confirmed that he never reported to immigration.

had children or other family with proper immigration status; (7) was linked to altered identity documents; (8) had past attempts to flee; and (9) lacked ties to the community, such as family, home, or a job." *Id.*

The Government argues that Mr. Vasquez Cruz is likely to escape because of his recent criminal history and the fact that he "never made his illegal entry to the United States and presence in the United States known to immigration authorities." (ECF No. 6 at 14.) To be sure, Mr. Vasquez Cruz's recent criminal charges weigh against him. But the relevant inquiry is not whether he "failed to be a law-abiding citizen in the past, but whether immigration enforcement would be able to arrest the noncitizen at another clearly identifiable location." *S. v. Blanche*, No. 26-CV-2265 (KMM/DLM), 2026 WL 1998718, at *6 (D. Minn. July 10, 2026). Mr. Vasquez Cruz first faced charges months ago, and his criminal defense attorney has attested that Mr. Vasquez Cruz has "posted bail and has appeared at every court date." (ECF No. 7-1 at 2.) The Government fails to point to any evidence on the record or supporting authority that connects Mr. Vasquez Cruz's recent criminal charges to a likelihood that they will render ICE unable to locate him. Finding none myself, Mr. Vasquez Cruz's criminal record is not enough to satisfy his warrantless arrest. *See S. v. Blanche*, 2026 WL 1998718, at *6.

As for the Government's reliance on the fact that Mr. Vasquez Cruz never reported to immigration authorities, that argument collapses the distinct, two-prong analysis that immigration officers must undertake to satisfy Section 1357(a)(2). Officers must determine

that there is probable cause that Mr. Vasquez Cruz violated certain immigration laws *and* that he is likely to escape. *See* 8 U.S.C. § 1357(a)(2); *Castanon Nava*, 806 F. Supp. 3d at 851. Allowing immigration officers to point to a noncitizen's lack of prior reporting as a basis to deem him a flight risk would render the distinction between the two findings required by Section 1357(a)(2) meaningless. It is also uncomfortably close to endorsing the unlawful practice of basing warrantless arrests on removability alone. *See Par*, 2026 WL 1603299, at *4; *Carlos F.P.P.*, 2026 WL 2824801, at *3. I decline to do either in this case.

Finding the Government's bases unpersuasive, I evaluate the remaining facts on the record myself and determine that they weigh against finding Mr. Vasquez Cruz likely to escape. Mr. Vasquez Crus has two young daughters of whom he is the sole custodian, he is gainfully employed, and he maintains a consistent place of residence. These facts show that he enjoys ties to his community, which counsels against finding him a flight risk. *See Castanon Nava*, 806 F. Supp. 3d at 854. There is also no evidence that he attempted to flee the ICE officers, refused to follow their commands, or evaded their questions during his interrogation and arrest. This further weighs against deeming him likely to escape. *See Juarez*, 2026 WL 2981947, at *3; *Catagna Vega v. Jamison, et al.*, No. 26-CV-7418, 2026 WL 3027032, at *3 (E.D. Pa. Oct. 8, 2026). While probable cause is not a "high bar," it does require the kind of "fair probability" upon which "reasonable and prudent people" act. *Kaley v. United States*, 571 U.S. 320, 338 (2014) (citation modified); *see also District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). The record before me does

not establish a fair probability that Mr. Vasquez Cruz was likely to escape. The Government cannot fall back on Section 1357(a)(2) to validate his warrantless arrest. Ultimately, because Mr. Vasquez Cruz was not likely to evade immigration authorities, if ICE agents wanted to arrest Mr. Vasquez Cruz, then they needed to go through the proper process to obtain an NTA and issue a warrant before arresting him.

### C. Remedy

"The traditional function of the writ of habeas corpus is to secure release from unlawful executive detention." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). A federal court adjudicating a habeas petition is authorized to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. The Government failed to abide by the requirements set by law, so justice requires Mr. Vasquez Cruz's immediate release. *See Navarro v. Jamison et al.*, No. CV 26-7095, 2026 WL 3073228, at *3 (E.D. Pa. Oct. 2, 2026). In so finding, I join many federal courts across the country, including three judges in this District. *See, e.g.*, *Lopez-Lopez*, 2026 WL 3094744, at *6; *Navarro*, 2026 WL 3073228, at *2; *Hernandez v. Jamison et al.*, No. 26-CV-7606, 2026 WL 3034460, at *2–3 (E.D. Pa. Oct. 9, 2026); *Gomez v. Guadian*, No. CV GLR-26-3078, 2026 WL 2546049, at *4 (D. Md. Aug. 28, 2026) (collecting cases).

## IV. CONCLUSION

I will grant Mr. Vasquez Cruz's petition. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

JOSHUA D. WOLSON, J.